FILED

2009 OCT -1  AM 10: 25

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
LOS ANGELES

BY _____ NL

1   Bradley A. Patterson, Esq.  (Cal. Bar No. 155482)
    E-Mail: bapatterson@lgilaw.com
2   LGI LLP
    LAWYERS GROUP INTERNATIONAL
3   18101 Von Karman Ave., Suite 330
    Irvine, CA  92612-0146
4   Telephone:  (949) 253-0500
    Facsimile:  (949) 253-0505
5
    Attorneys for Plaintiff David B. Greenberg
6

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                                                    BY FAX

11  DAVID B. GREENBERG,                )   Case No.  CV09-05273 SJO (RCx)
    an individual,                     )
12                                     )
                        Plaintiff,     )   **FIRST AMENDED CIVIL**
13  vs.                                )   **COMPLAINT FOR:**
                                       )
14  TIMOTHY P. FLYNN, an individual;   )   **1.   MALICIOUS PROSECUTION;**
    CLAUDIA TAFT, an individual;       )
15  JOSEPH LOONAN, an individual;      )   **2.   INTENTIONAL INFLICTION**
    DENNIS MALLOY, an individual;      )   **      OF EMOTIONAL DISTRESS;**
16  JOHN S. CHOPACK, an individual;    )
    ERIN COLLINS, an individual;       )   **3.   BREACH OF FIDUCIARY**
17  DIANE FULLER, an individual;       )   **      DUTY;**
    MARK ELY, an individual; and       )
18  ANDREW GANTMAN, an individual,     )   **4.   FRAUDULENT**
                                       )   **      CONCEALMENT; AND**
19                      Defendants.    )
                                       )   **5.   CIVIL CONSPIRACY**
20  _____)
                                           [*DEMAND FOR TRIAL BY JURY*]
21

22       Plaintiff David B. Greenberg alleges

23

24                         **JURISDICTION**

25       1.    This Court has subject matter jurisdiction in this action pursuant to

26  28 U.S.C. § 1332(a) in that more than $75,000.00 is at issue in this action,

1   exclusive of interest and costs, and there is diversity of State citizenship between

2   Plaintiff, on the one hand, and each of the Defendants, on the other hand.

3

4                                   **VENUE**

5        2.      The claims set forth in this Complaint arise from and/or are related to

6   Plaintiff's prior employment with KPMG LLP in the County of Los Angeles, State

7   of California.  Greenberg is informed and believes and thereon alleges that each of

8   the defendants named in this action are current or former partners of KPMG LLP,

9   or are professionals employed by KPMG LLP.

10

11                                  **PARTIES**

12       3.      Plaintiff David B. Greenberg ("Greenberg") is an individual resident

13   in the County of Palm Beach, State of Florida.

14       4.      Non-party KPMG LLP ("KPMG")  is a limited liability partnership

15   organized and existing under the laws of the State of Delaware with its principal

16   place of business in the City of New York, State of New York.  KPMG is one of

17   the Big 4 accounting firms.

18       5.      KPMG is a member of non-party KPMG International, a Swiss

19   cooperative under which accounting firms around the world operate using the trade

20   name "KPMG".

21       6.      Greenberg is informed and believes and thereon alleges that

22   Defendant Timothy P. Flynn is, or at least at all times relevant herein was, an

23   individual employed as a partner of KPMG, the Chairman of KPMG, and the

24   Chairman of KPMG International employed in KPMG's offices located in New

25   York, New York.  Greenberg is further informed and believes and thereon alleges

26   that Defendant Flynn engaged in material acts or omissions in, or which had a

- 2 -                                    FIRST AMENDED COMPLAINT

1  foreseeable effect in, this judicial district and which were a proximate cause of the
2  damages suffered by Greenberg as alleged in this complaint.

3       7.    Greenberg is informed and believes and thereon alleges that
4  Defendant Claudia Taft is, or at least at all times relevant herein was, an individual
5  employed as a partner of KPMG in its office located in New York, New York, and
6  that Defendant Taft engaged in material acts or omissions in, or which had a
7  foreseeable effect in, this judicial district and which were a proximate cause of the
8  damages suffered by Greenberg as alleged in this complaint.

9       8.    Greenberg is informed and believes and thereon alleges that
10  Defendant Joseph Loonan is, or at least at all times relevant herein was, an
11  individual employed by KPMG in its office located in New York, New York, and
12  that Defendant Loonan engaged in material acts or omissions in, or which had a
13  foreseeable effect in, this judicial district and which were a proximate cause of the
14  damages suffered by Greenberg as alleged in this complaint.

15       9.    Greenberg is informed and believes and thereon alleges that
16  Defendant Dennis Malloy is, or at least at all times relevant herein was, an
17  individual employed as a partner of KPMG in its office located in Los Angeles,
18  California, and that Defendant Malloy engaged in material acts or omissions in, or
19  which had a foreseeable effect in, this judicial district and which were a proximate
20  cause of the damages suffered by Greenberg as alleged in this complaint.

21      10.    Greenberg is informed and believes and thereon alleges that
22  Defendant John Chopack is, or at least at all times relevant herein was, an
23  individual employed as a partner of KPMG in its office located in New York, New
24  York, and that Defendant Chopack engaged in material acts or omissions in, or
25  which had a foreseeable effect in, this judicial district and which were a proximate
26  cause of the damages suffered by Greenberg as alleged in this complaint.

        FIRST AMENDED COMPLAINT

1        11.    Greenberg is informed and believes and thereon alleges that

2    Defendant Erin Collins is, or at least at all times relevant herein was, an individual

3    employed as a partner of KPMG in its office located in Los Angeles, California,

4    and that Defendant Collins engaged in material acts or omissions in, or which had

5    a foreseeable effect in, this judicial district and which were a proximate cause of

6    the damages suffered by Greenberg as alleged in this complaint.

7        12.    Greenberg is informed and believes and thereon alleges that

8    Defendant Diane Fuller is, or at least at all times relevant herein was, an individual

9    employed as a partner of KPMG in its office located in New York, New York,

10   California, and that Defendant Fuller engaged in material acts or omissions in, or

11   which had a foreseeable effect in, this judicial district and which were a proximate

12   cause of the damages suffered by Greenberg as alleged in this complaint.

13       13.    Greenberg is informed and believes and thereon alleges that

14   Defendant Mark Ely is an individual presently employed by The Taarp Group LLP

15   in Rockville, Maryland; that Defendant Ely was at all times relevant herein was

16   previously employed as a partner of KPMG in its office located in Washington

17   D.C.; and that Defendant Ely engaged in material acts or omissions in, or which

18   had a foreseeable effect in, this judicial district and which were a proximate cause

19   of the damages suffered by Greenberg as alleged in this complaint.

20   ///

21   ///

22

23

24

25

26

- 4 -

14.     Greenberg is informed and believes and thereon alleges that Defendant Andrew Gantman is an individual employed as a partner of SingerLewak, LLP, in Woodland Hills, California; that Defendant Gantman was at all times relevant herein previously employed by KPMG in its office located in Los Angeles, California; and that Defendant Gantman engaged in material acts or omissions in, or which had a foreseeable effect in, this judicial district and which were a proximate cause of the damages suffered by Greenberg as alleged in this complaint.

15.     Defendants Flynn, Taft, Loonan, Malloy, Chopack, Collins, Fuller, Ely, and Gantman are collectively referred to in this complaint as "Defendants".

16.     Greenberg is informed and believes and thereon alleges that, in doing the acts alleged in this complaint, each defendant was the principal, agent, representative, employee, partner, joint venturer, and/or co-conspirator of each of the other defendants and did such acts with the knowledge, prior consent, instruction, approval, and/or subsequent ratification of each of the other defendants.

## **FACTUAL BACKGROUND**

17.     Greenberg earned a Masters Degree in Accounting and was at all times relevant herein qualified in the State of California as a Certified Public Accountant.

18.     Greenberg first joined KPMG in 1989 and voluntarily left the firm in 1994 to pursue other endeavors.

/ / /

/ / /

FIRST AMENDED COMPLAINT

19.     Greenberg rejoined KPMG in its Los Angeles, California, office in the Spring of 1999.  KPMG categorized Greenberg as a "Senior Manager" until the management committee met several weeks later and re-categorized Greenberg as a "Class B Partner."

20.     Against his expressly stated desires, Greenberg was assigned to work in the Stratecon practice group in KPMG's Los Angeles office.

21.     KPMG assigned the Stratecon practice group the task of devising and marketing tax avoidance and deferral products to high net worth corporate clients.

22.     The pervasive firm culture at KPMG was to maximize its profits, oftentimes at the expense of professional ethics and obligations to clients.  In the tax division, which was one of the three major divisions within KPMG, a significant focus was placed on devising and marketing aggressive tax avoidance strategies.

23.     KPMG as a whole, from its Board of Directors and Management Committee on down throughout the partnership, was aware that the tax avoidance strategies were extremely profitable due to the large fees that could be charged and the relatively minimal amount of work that was necessary.  KPMG specifically approved of the marketing of those tax avoidance strategies.  For example, the official KPMG training manual included a section on devising an abusive real estate tax shelter for a fictional company referred to as "Bronson Realty, Inc."

24.     Tax shelter work was an integral part of KPMG and the services that it offered to its clients.

25.     Greenberg is informed and believes and thereon alleges that many of KPMG's largest clients, including Citibank, Fannie May, New Century, RGI, Occidental Petroleum, Ryder International, AIG, Goldman Sachs and its mutual funds, Berkshire Hathaway, Bank of America, Worldcom, Washington Mutual,

FIRST AMENDED COMPLAINT

1  and Countrywide Financial, participated in, and will testify in this action that they

2  participated in, abusive tax shelters created and marketed by KPMG.

3      26.    Greenberg was informed that the tax products with which Greenberg

4  was involved at KPMG were known throughout the partnership and were approved

5  at the highest levels of KPMG management.  Greenberg was informed that, within

6  KPMG, the Washington National Tax office ("WNT") and KPMG's Department of

7  Professional Practice ("DPP"), which is KPMG's professional oversight office,

8  approved all of the tax products that were devised and marketed by KPMG and

9  were well aware of the tax investment strategies in which Greenberg was involved.

10     27.    Greenberg relied on the representations, conclusions, and opinions of

11  KPMG management, the expert KPMG tax personnel above him, WNT, and DPP,

12  and Greenberg also independently believed, that all tax products in which

13  Greenberg was involved were lawful and were "more likely than not" to be

14  ultimately upheld as lawful tax strategies.

15     28.    Greenberg later learned after he had ceased issuing tax strategy

16  opinions for KPMG there had been some differences of opinion voiced within the

17  upper ranks of KPMG concerning the viability of the tax shelters being marketed

18  by KPMG–although that information had been concealed from Greenberg.

19  Greenberg is nevertheless informed and believes that the majority of experts at

20  KPMG who reviewed the tax products on which Greenberg worked concluded that

21  they were "more likely than not" to be upheld as lawful tax strategies.

22     29.    In 2002 the Internal Revenue Service ("IRS") began issuing

23  summonses to KPMG in an investigation into the marketing of abusive tax

24  shelters.

25  / / /

26  / / /

FIRST AMENDED COMPLAINT

30.    Greenberg is informed and believes and thereon alleges that, in or about 2002, Mike Hamersley was a senior manager in KPMG's office in Los Angeles.

31.    Greenberg is now informed and believes and thereon alleges that Mr. Hamersley had been actively involved in promoting illegal abusive tax shelters at KPMG.

32.    Greenberg is informed and believes and thereon alleges that, in early 2002, having learned that the IRS had commenced its investigation of abusive tax shelters, Mr. Hamersley commenced a deliberate course of conduct to distract attention from the tax shelter work in which he had been engaged.

33.    Greenberg is informed and believes and thereon alleges that Mr. Hamersley was also unhappy that he had not been named a partner in KPMG and that he partially blamed Greenberg for not being admitted to the KPMG partnership.

34.    Greenberg is informed and believes and thereon alleges that, in order to advance his agenda, Mr. Hamersley falsely reported to KPMG management that Greenberg was engaged in marketing illegal abusive tax shelters.

35.    Greenberg is informed and believes and thereon alleges that, as a result of Mr. Hamersley's false and vindictive allegations to KPMG management, in June, 2002, KPMG initiated a six-month long investigation of Greenberg.  The investigation included a detailed search of Greenberg's background and having private investigators follow Greenberg and his family.

36.    The investigation was completed in December, 2002, and Greenberg was informed by KPMG that the investigation had been concluded satisfactorily in his favor.

/ / /

- 8 -

37.   Disgusted with the manner in which he had been treated in connection with the KPMG investigation, Greenberg tendered his resignation to KPMG in February 2003.

38.   Once Greenberg tendered his resignation, severance discussions commenced between Greenberg and KPMG.

39.   Defendant Taft was responsible for negotiating the severance agreement between KPMG and Greenberg.  During those negotiations, Taft failed to inform Greenberg of the IRS investigation, even though Taft was aware of that investigation.

40.   A written settlement agreement was entered into by and between KPMG and Greenberg on or about September 5, 2003, in connection with Greenberg's departure from KPMG.

41.   Those discussions were satisfactorily concluded and Greenberg's resignation from KPMG became retroactively effective as of August 31, 2003.

42.   Had Greenberg been informed of the IRS investigation by Taft, KPMG, or any of the other KPMG partners–including Defendants–Greenberg would have insisted that KPMG expressly agree to defend and indemnify him in connection with the investigation and any related actions.  Because that information was wrongfully withheld from Greenberg, however, the severance agreement is silent on the issue.

43.   Later in 2003, the United States Senate commenced its investigation into the tax shelter industry.

44.   KPMG and its partners–including Defendants–refused to fully cooperate in the IRS and Senate investigations and intentionally withheld evidence. KPMG's conduct in those investigations was later "characterized by obstinance and arrogance."

45.    Greenberg is informed and believes and thereon alleges that Taft initially intentionally attempted to deceive the IRS in its investigation of KPMG.

46.    Greenberg is informed and believes and thereon alleges that, when Taft's attempts to deceive the IRS were revealed, Taft wrongfully attempted to conceal her actions.

47.    Greenberg is informed and believes and thereon alleges that Taft failed to deal honestly and forthrightly with the IRS during its investigation by parsing language and taking positions that relevant and discoverable information was subject to the attorney-client privilege or was not responsive.

48.    Greenberg is informed and believes and thereon alleges that, later in the IRS investigation, Taft falsely claimed that she had no knowledge of information that had been withheld from the IRS, notwithstanding her affirmative previous actions to conceal such information from the IRS.

49.    The actions of KPMG and its partners during the IRS investigation came back to haunt it.  In early February, 2004, the investigation was referred by the IRS to the Department of Justice ("DOJ"), which then presented the case to the Grand Jury for the Southern District of New York.

50.    In early 2004, when it became apparent to KPMG and its partners that the DOJ was moving toward criminally indicting the firm for tax fraud related offenses, KPMG and its partners suddenly reversed position.

51.    KPMG and its partners were aware that the earlier indictment of the accounting firm Arthur Andersen LLP resulted in the complete destruction and closure of that firm.

52.    Three-quarters of KPMG's practice consists of highly lucrative audit work.  KPMG and its partners knew that a criminal indictment would result in the loss of a very substantial portion of that profitable audit work.

- 10 -

53.    Greenberg is informed and believes and thereon alleges that KPMG's largest audit clients, including Citibank, Fannie May, New Century, RGI, the United States Treasury Department, the DOJ, the Federal Reserve, Occidental Petroleum, Ryder International, AIG, Goldman Sachs and its mutual funds, Berkshire Hathaway, Bank of America, Worldcom, IBM, Apple, Disney, Pixar, Washington Mutual, and Countrywide Financial, will testify in this action that a criminal indictment of KPMG would have caused them to cease using KPMG as their auditor and/or tax advisor.

54.    KPMG and its partners knew that a loss of its audit work due to an indictment would destroy KPMG and became aware that their very survival was at stake.  No major financial services firm had ever survived a criminal indictment.

55.    Greenberg is informed and believes and thereon alleges that KPMG and its partners intentionally concealed its extensive abusive corporate tax shelter work from the IRS and DOJ.

56.    Greenberg is informed and believes and thereon alleges that KPMG and its partners also sought to halt the DOJ investigation in an effort to prevent the investigation and disclosure of the continuing audit fraud in which they were engaged, and which continues to this day.

57.    Greenberg is informed and believes and thereon alleges that KPMG was complicit in obscuring the true financial condition of companies and governmental agencies by approving off balance sheet transactions to conceal bad debts and by approving accounting practices that did not result in a an accurate representation of the clients' finances.

58.    Greenberg is informed and believes and thereon alleges that, in an effort to satiate the DOJ and save themselves from further investigation of their tax shelter activities and audit work, and in order to save themselves from a criminal

1    indictment, KPMG and its partners–including the Defendants–made the deliberate

2    decision to instead wrongfully offer-up and sacrifice a number of its current and

3    former partners, including Greenberg.

4           59.    Greenberg is informed and believes and thereon alleges that KPMG

5    and its partners–including Defendants–made the deliberate decision to do whatever

6    was necessary, and whatever the DOJ demanded, regardless of the truth of the

7    matter and regardless of the effects on KPMG's current and former partners,

8    including Greenberg, to halt the DOJ investigation of its tax shelter work and to

9    ward off an indictment.

10          60.    In the effort by KPMG and its partners–including Defendants–to

11   satiate the DOJ and avoid further investigation of their activities, even though tax

12   avoidance work and a tax avoidance mentality permeated every level of KPMG,

13   and even thought the tax avoidance work had been vetted and condoned at the very

14   highest levels of KPMG management, KPMG sought to minimize the firm-wide

15   role in tax avoidance and essentially falsely represented to the DOJ that the tax

16   strategies that had been marketed and sold were essentially the work of a rogue

17   group of employees and had been concealed from, and was unknown to, KPMG

18   management.

19          61.    Greenberg is informed and believes and thereon alleges that, in its

20   effort to appease the DOJ, KPMG and its partners–including Defendants–made

21   false representations of material facts to the DOJ, and made other statements to the

22   DOJ recklessly without knowledge if they were true or not.

23          62.    Greenberg is informed and believes and thereon alleges that, during

24   the DOJ investigation, Defendant Malloy lied to the DOJ about Greenberg's

25   activities, notwithstanding that Malloy had reviewed and approved most of those

26   activities.  Malloy lied when he denied reviewing Greenberg's files; lied when he

- 12 -

FIRST AMENDED COMPLAINT

1 denied having substantial information in his own files regarding the client
2 investment strategies in which Greenberg was involved; and lied when he claimed
3 that Greenberg had concealed client files.

4       63.     Malloy had access to all of the files related to the transactions on
5 which Greenberg had worked and also maintained his own files on the
6 transactions. Malloy knew that certain client files were maintained by Greenberg's
7 secretary in a file cabinet adjacent to her work station as part of the normal course
8 of business, yet Malloy falsely claimed that these client files had been concealed
9 by Greenberg.

10      64.     Greenberg is informed and believes and thereon alleges that, during
11 the DOJ investigation of KPMG, Defendant Chopack misrepresented Greenberg's
12 activities to the DOJ by falsely claiming that Greenberg was involved with certain
13 illegal tax shelters. At the same time, Chopack concealed from the DOJ his own
14 extensive involvement in abusive tax shelters that he had promoted to his own
15 clients.

16      65.     Greenberg refused to issue a tax opinion for a client that was
17 requested by Chopack while the KPMG investigation of Greenberg was underway
18 in 2002. Greenberg is informed and believes and thereon alleges that Chopack
19 later told the DOJ that the transaction was an illegal tax shelter in which Greenberg
20 had been involved. Att the time, however, Chopack had authorized the issuance of
21 a tax opinion by another KPMG partner when Greenberg refused to do so.

22      66.     Greenberg is informed and believes and thereon alleges that, during
23 the DOJ investigation of KPMG, Defendant Ely lied to the DOJ and the Grand
24 Jury when describing tax shelter registration requirements and concealed his
25 involvement in the determination that KPMG tax shelter transactions did not need
26 to be registered.

67.   Ely falsely testified that SOS transactions were required to be registered with the IRS as tax shelters, when the truth is Ely had earlier prepared an internal KPMG memorandum stating that the law was clear under Internal Revenue Code § 6111 that Short Option Strategy ("SOS") transactions were not required to be registered.

68.   Greenberg is informed and believes and thereon alleges that Defendant Collins lied to the DOJ about Greenberg to conceal her extensive involvement in helping a taxpayer obtain hundreds of millions of dollars in BLIPs tax benefits and in an effort to appease the DOJ by appearing to be fully cooperating.

69.   Greenberg is informed and believes and thereon alleges that Collins lied to the DOJ when she told the DOJ that she had little involvement with that BLIPs client, notwithstanding that she had charged hundreds of hours of time, and thousands of dollars of expenses, to that client; when she told the DOJ that Greenberg had purchased a property for less than fair market value in and effort to conceal the receipt of fees for tax strategy work; and when she told the DOJ that she had asked Greenberg to stay away from her clients when Greenberg had actually never had any contact with Collins.

70.   Greenberg is informed and believes and thereon alleges that Defendant Fuller lied regarding the Spilsbury civil matter against KPMG when she falsely testified under oath in a deposition that an e-mail was sent to Greenberg by upper management to not issue SOS opinion letters, notwithstanding the fact that no such e-mail was ever sent to Greenberg and notwithstanding that Fuller herself led the charge at KPMG to promote the SOS tax shelter to KPMG clients, including being the lead partner on forming formal alliances with two purported independent promoters of the SOS tax shelter.

FIRST AMENDED COMPLAINT

71.     On March 19, 2005, Defendant Loonan sent an e-mail message to Mr. Barloon, one of the Skadden Arps lawyers for KPMG, stating that the statement of facts that prosecutors wanted KPMG to use as its admission "is not of facts but of conclusions based on some facts, distortions of facts and adverse inferences."

72.     Loonan referred to the statement of facts that KPMG would later adopt as "false, misleading and unsupportable." Adopting the words of a Kris Kristofferson song when acknowledging that KPMG must nevertheless adopt the statement of facts to save itself from indictment, Loonan wrote, "Freedom's just another word for nothing left to lose."

73.     Greenberg is informed and believes and thereon alleges that Mr. Bennett, who was lead outside counsel for KPMG in its negotiations with the DOJ, negotiated a proposed Statement of Facts with the DOJ. Greenberg is further informed and believes and thereon alleges that KPMG, including the individuals on its Board of Directors and Management Committee, affirmed the content of the Statement of Facts, notwithstanding that they all knew the Statement of Facts contained material false statements, knew there was no factual basis for many of the material assertions that are set forth in the Statement, or affirmed the factual statements with no reasonable basis for knowing if the statements were or were not true.

74.     Based on KPMG's false and reckless statements and its agreement to cooperate with the DOJ going forward, on or about August 26, 2005, the United States Attorney's Office for the Southern District of New York and KPMG entered into a Deferred Prosecution Agreement ("DPA"), along with an accompanying Statement of Facts.

75.     KPMG consented to the filing of a one-count Information (which was subsequently dismissed upon KPMG's assumed compliance with the DPA). This

- 15 -

FIRST AMENDED COMPLAINT

1    Information charged KPMG with participating in a conspiracy to defraud the

2    United States and its agency the IRS to commit tax evasion, to make and subscribe

3    false and fraudulent tax returns, and to aid and assist in the preparation and filing

4    of said tax returns.

5        76.    Within the DPA and the associated Statement of Facts, KPMG

6    accepted responsibility for violations of law.  KPMG admitted, through the

7    conduct of certain KPMG tax leaders, partners, and employees, KPMG had

8    assisted high net worth United States citizens to evade United States individual

9    income taxes on billions of dollars in capital gain and ordinary income by

10   developing, promoting and implementing unregistered and fraudulent tax shelters.

11       77.    As part of the DPA, KPMG agreed to pay a penalty to the United

12   States of $456 million.

13       78.    In connection with the DPA, however, KPMG incredibly

14   simultaneously negotiated an agreement with the Treasury Department that KPMG

15   would be retained as the auditor for the Treasury Department's twelve bureaus,

16   which account for $6.9 trillion in assets and is KPMG's largest audit client.

17       79.    The importance of KPMG maintaining its position as the Treasury

18   Department's auditor, which it was believed would demonstrate to other clients

19   that KPMG could still be trusted notwithstanding the DPA, is evidenced by Mr.

20   Bennett's statement on behalf of KPMG to the DOJ that, if KPMG was allowed to

21   keep all of its government audits,  "We will do everything we can to help you

22   indict these partners."

23       80.    Greenberg is informed and believes and thereon alleges that Flynn,

24   Loonan, Taft, and Chopack instructed KPMG's attorneys at Skadden Arps, who

25   were representing KPMG in connection with the DOJ investigation, to inform the

26   DOJ that, as long as KPMG would not be indicted and would be allowed to retain

its hundreds of government audits, KPMG would do everything possible to help the DOJ indict Greenberg, regardless of the true facts, which KPMG concealed from the DOJ.

81. KPMG's promise to the DOJ to assist it in obtaining indictments of the KPMG partners was fulfilled. As a result of the actions of KPMG, its Board of Directors, Management Committee, partners–including Defendants, and employees as set forth herein and as will be proven at trial, Greenberg was named on October 17, 2005, in a superseding indictment in the criminal case in the Southern District of New York entitled *United States v. Stein, et al.*, S1 05 Crim. 0888 (LAK). Greenberg was arrested and incarcerated the same day.

82. The indictment against Greenberg arose directly from the course and scope of his employment with KPMG.

83. The allegations against Greenberg in the superseding indictment closely mirror the purported "facts" that KPMG had provided in its Statement of Facts to the DOJ.

84. Prior to the events that occurred as set forth in this complaint, Greenberg had never been arrested, had never been convicted of any crime other than minor traffic infractions, had never been the subject any disciplinary action by the California State Board of Accountancy, and had never been accused of any improper conduct or investigated by any regulatory authority.

85. Prior to trial, Greenberg was incarcerated for five months in the Federal Detention Facility in New York City.

86. For a man who had never been arrested before, Greenberg was repeatedly subjected to the indignity of being compelled to strip naked and submit to complete body and body cavity searches in the presence of other prisoners. Greenberg was forced to share a large cell with up to thirty other prisoners.

FIRST AMENDED COMPLAINT

1   Greenberg was subjected to physical assaults by other prisoners due to his Jewish
2   ancestry and endured taunting by guards in the Prison because of his status as a
3   Jewish white collar inmate.  Greenberg was forced to fight other prisoners to avoid
4   being sexually assaulted.  Greenberg witnessed the sexual assault of other prisoners
5   and deadly assaults between prisoners with make-shift weapons and felt
6   continually threatened.  Greenberg was forced to live with the constant stench of
7   vomit, compelled to consume food that he did not find suitable for animal
8   consumption, and relieve himself of body wastes in full view of the other
9   prisoners.

10          87.    When Greenberg was finally released on bail in April, 2006, after
11  almost six months of confinement, he was placed on house arrest with a monitoring
12  bracelet strapped to his ankle.  For the next 2-1/2 years, Greenberg was ordered to
13  reside, at great expense, in the borough of Manhattan.  Greenberg continued to
14  exist as a prisoner confined by Court Order to his residence, his lawyer's offices, or
15  the courthouse.

16          88.    Following a trial by jury, on December 18, 2008, Greenberg was
17  acquitted on all charges.

18          89.    As a result of the actions of Defendants, and each of them, as set forth
19  herein and as will be proven at trial, Greenberg lost over three years of freedom
20  and has suffered severe physical and emotional distress.

21          90.    As a result of the actions of Defendants, and each of them, as set forth
22  herein and as will be proven at trial, the California State Board of Accountancy
23  revoked Greenberg's license to practice accounting, thus preventing his ability to
24  work post-acquittal as an accountant.

25  / / /
26  / / /

- 18 -

FIRST AMENDED COMPLAINT

**FIRST CLAIM FOR RELIEF**

(Against all Defendants for Malicious Prosecution)

91.     Greenberg refers to paragraphs 1 through 90, inclusive, and incorporates those allegations herein by this reference.

92.     Greenberg alleges that Defendants, and each of them, by their acts and omissions as set forth herein, intentionally and wrongfully caused a criminal proceeding to be brought against Greenberg.

93.     Greenberg alleges that, but for the actions of Defendants, and each of them, as set forth herein, the criminal proceeding would not have been brought against Greenberg.

94.     Greenberg alleges that Defendants, and each of them, were actively involved in causing Greenberg to be criminally prosecuted or in causing the continuation of the prosecution against him.

95.     The criminal proceeding ended in Greenberg's favor following a determination on the merits.

96.     Greenberg alleges that no reasonable person in the same circumstances as Defendants, and each of them, would have believed that there were legitimate grounds for causing Greenberg to be indicted, arrested, and prosecuted.

97.     Greenberg alleges that Defendants, and each of them, acted primarily for a purpose other than to bring Greenberg to justice.

/ / /

/ / /

FIRST AMENDED COMPLAINT

98.   As a result of the acts and omissions of Defendants, and each of them, as set forth herein, Greenberg has incurred damages in the form of attorneys' fees, costs, and lost income in an amount subject to proof at the time of trial, but which, to date, exceed $10 million.  Greenberg has also suffered from severe physical and emotional distress as a result of the acts and omissions of Defendants, and each of them, as set forth herein.

99.   Greenberg is informed and believes and thereon alleges that, in doing the acts alleged herein, Defendants, and each of them, acted in conscious and intentional disregard for Greenberg's rights and acted with oppression, fraud, and/or malice so as to entitle Greenberg to recover punitive and exemplary damages against Defendants, and each of them, in an amount deemed by the trier of fact to be sufficient to punish, deter, and make an example of Defendants, and each of them.

## SECOND CLAIM FOR RELIEF

(Against all Defendants for Intentional Infliction of Emotional Distress)

100.   Greenberg refers to paragraphs 1 through 90, inclusive, and incorporates those allegations herein by this reference.

101.   Greenberg is informed and believes and thereon alleges that Defendants, and each of them, intended to cause severe physical and emotional distress to Greenberg, or acted in reckless disregard in causing severe physical and emotional distress to Greenberg.

102.   The acts and omissions of Defendants, and each of them, as set forth herein were outrageous and went far beyond the bounds of human decency.

103.   Greenberg  suffered severe physical and emotional distress as a result of the acts and omissions of Defendants, and each of them.

FIRST AMENDED COMPLAINT

1   104.   As a result of the acts and omissions of Defendants, and each of them,
2   as set forth herein, Greenberg has incurred damages in the form of attorneys' fees
3   and costs in an amount subject to proof at the time of trial, but which, to date,
4   exceed $10 million.  Greenberg has also suffered from severe physical and
5   emotional distress as a result of the acts and omissions of Defendants, and each of
6   them, as set forth herein.

7   105.   Greenberg is informed and believes and thereon alleges that, in doing
8   the acts alleged herein, Defendants, and each of them, acted in conscious and
9   intentional disregard for Greenberg's rights and acted with oppression, fraud,
10  and/or malice so as to entitle Greenberg to recover punitive and exemplary
11  damages against Defendants, and each of them, in an amount deemed by the trier
12  of fact to be sufficient to punish, deter, and make an example of Defendants, and
13  each of them.

14
15              **THIRD CLAIM FOR RELIEF**
16          (Against all Defendants except Defendant Gantman
17                   for Breach of Fiduciary Duty)

18  106.   Greenberg refers to paragraphs 1 through 90, inclusive, and
19  incorporates those allegations herein by this reference.

20  107.   To the extent that Greenberg was a "partner" of KPMG under the laws
21  of the State of Delaware where KPMG is organized, Defendants, and each of them,
22  were Greenberg's partners or otherwise owed fiduciary duties to Greenberg.

23  108.   Defendants, and each of them, owed Greenberg fiduciary duties of
24  loyalty.

25  109.   Defendants, and each of them, breached their fiduciary duties to
26  Greenberg by engaging in the acts and omissions set forth herein.

- 21 -

FIRST AMENDED COMPLAINT

110.   The acts and omissions of Defendants, and each of them, as set forth herein were a substantial factor in causing the damages suffered by Greenberg.

111.   As a result of the acts and omissions of Defendants, and each of them, as set forth herein, Greenberg has incurred damages in the form of attorneys' fees and costs in an amount subject to proof at the time of trial, but which, to date, exceed $10 million.  Greenberg has also suffered from severe physical and emotional distress as a result of the acts and omissions of Defendants, and each of them, as set forth herein.

112.   Greenberg is informed and believes and thereon alleges that, in doing the acts alleged herein, Defendants, and each of them, acted in conscious and intentional disregard for Greenberg's rights and acted with oppression, fraud, and/or malice so as to entitle Greenberg to recover punitive and exemplary damages against Defendants, and each of them, in an amount deemed by the trier of fact to be sufficient to punish, deter, and make an example of Defendants, and each of them.

## **FOURTH CLAIM FOR RELIEF**

(Against all Defendants except Defendant Gantman for Fraudulent Concealment)

113.   Greenberg refers to paragraphs 1 through 90, inclusive, and incorporates those allegations herein by this reference.

114.   To the extent that Greenberg was a "partner" of KPMG under the laws of the State of Delaware where KPMG is organized, Defendants, and each of them, were Greenberg's partners and acted in concert through the KPMG partnership.

115.   Defendants, and each of them, owed Greenberg fiduciary duties of loyalty.

/ / /

- 22 -

116.   Defendants, and each of them, concealed and failed to inform Greenberg of the material facts set forth herein.

117.   Greenberg had no independent knowledge of the facts that had been concealed from him.

118.   The omissions of Defendants, and each of them, as set forth herein were intended to, and did, deceive Greenberg.

119.   Greenberg justifiably relied on the deception of Defendants, and each of them.

120.   The omissions of Defendants, and each of them, as set forth herein were a substantial factor in causing the damages suffered by Greenberg.

121.   As a result of the omissions of Defendants, and each of them, as set forth herein, Greenberg has incurred damages in the form of attorneys' fees and costs in an amount subject to proof at the time of trial, but which, to date, exceed $10 million.  Greenberg has also suffered from severe physical and emotional distress as a result of the omissions of Defendants, and each of them, as set forth herein.

122.   Greenberg is informed and believes and thereon alleges that Defendants, and each of them, acted in conscious and intentional disregard for Greenberg's rights and acted with oppression, fraud, and/or malice so as to entitle Greenberg to recover punitive and exemplary damages against Defendants, and each of them, in an amount deemed by the trier of fact to be sufficient to punish, deter, and make an example of Defendants, and each of them.

/ / /

/ / /

FIRST AMENDED COMPLAINT

## FIFTH CLAIM FOR RELIEF

(Against all Defendants for Civil Conspiracy)

123.   Greenberg refers to paragraphs 1 through 90, inclusive, and incorporates those allegations herein by this reference.

124.   Greenberg is informed and believes and thereon alleges that Defendants, and each of them, conspired with each other, and/or were aware of the common goal of the conspiracy.

125.   Greenberg is informed and believes and thereon alleges that the common goal of the conspiracy was to see Greenberg indicted, arrested, jailed, tried, convicted, and imprisoned, even though Defendants, and each of them, knew or should have known that Greenberg had committed no crime.

126.   Greenberg is informed and believes and thereon alleges that Defendants, and each of them, engaged in the acts and omission set forth herein in furtherance of the conspiracy.

127.   As a result of the acts and omissions of Defendants, and each of them, as set forth herein, Greenberg has incurred damages in the form of attorneys' fees and costs in an amount subject to proof at the time of trial, but which, to date, exceed $10 million.  Greenberg has also suffered from severe emotional distress as a result of the acts and omissions of Defendants, and each of them, as set forth herein.

/ / /

/ / /

FIRST AMENDED COMPLAINT

128.   Greenberg is informed and believes and thereon alleges that, in doing the acts alleged herein, Defendants, and each of them, acted in conscious and intentional disregard for Greenberg's rights and acted with oppression, fraud, and/or malice so as to entitle Greenberg to recover punitive and exemplary damages against Defendants, and each of them, in an amount deemed by the trier of fact to be sufficient to punish, deter, and make an example of Defendants, and each of them.

## PRAYER FOR RELIEF

WHEREFORE, Greenberg prays for judgment against Defendants, and each of them, as follows:

1.   For reimbursement of the attorneys's fees and costs incurred by Greenberg in defending himself in the criminal action, which sum shall be subject to proof at the time of trial, but which is an amount in excess of $10,000,000.00;

2.   For pain, suffering, and severe physical and emotional distress;

3.   For lost wages and income, and for future lost earnings potential, which sum shall be subject to proof at the time of trial, but which is an amount in excess of $20,000,000.00;

4.   For punitive and exemplary damages in an amount deemed by the trier of fact to be sufficient to punish, deter, and make an example of Defendants, and each of them;

5.   For pre-judgment interest at the maximum rate permitted by law on all liquidated damages;

6.   For costs of suit incurred herein; and

/ / /

/ / /

- 25 -

FIRST AMENDED COMPLAINT

1        7.    For such other and further relief as the Court may deem just and

2 proper.

3

4 DATED:  October 1, 2009             LGI LLP
                                     LAWYERS GROUP INTERNATIONAL

5

6                                  By _____

7                                      Bradley A. Patterson
                                   Attorneys for Plaintiff David B. Greenberg

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT

## DEMAND FOR TRIAL BY JURY

Plaintiff David B. Greenberg requests a trial by jury on all legal claims asserted in this action.

DATED:  October 1, 2009

LGI LLP
LAWYERS GROUP INTERNATIONAL

By _____
Bradley A. Patterson
Attorneys for Plaintiff David B. Greenberg

- 27 -

FIRST AMENDED COMPLAINT