# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID B. GREENBERG, | NO. CV 09-05273 SJO (RCx) |
| Plaintiff, | **ORDER GRANTING DEFENDANT ERIN COLLINS' PETITION TO COMPEL ARBITRATION** [Docket No. 12] |
| v. | |
| TIMOTHY P. FLYNN, et al., | |
| Defendants. | |

This matter is before the Court on Defendant Erin Collins' ("Defendant Collins") Petition to Compel Arbitration, filed November 3, 2009. Plaintiff David B. Greenberg ("Plaintiff") filed an Opposition, to which Defendant Collins replied.[1] The Court found this matter suitable for disposition without oral argument and vacated the hearing set for February 22, 2010. *See* Fed. R. Civ. P. 78(b). For the following reasons, Defendant Collins' Petition is **GRANTED**.

---

[1] The Court notes that Plaintiff's Opposition, filed February 2, 2010, is in opposition to Defendant Collins' present Petition to Compel Arbitration, as well as in opposition to a related Petition to Compel Arbitration, filed by co-Defendants Dennis Malloy and Andrew Gantman. (*See* Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. to Compel Arbitration ("Pl.'s Opp'n").) Similarly, Defendant Collins' Reply, filed on February 8, 2010, is in support of Defendant Collins' Petition, as well as in support of Defendants Gantman and Malloy's Petition. (*See generally* Reply in Further Supp. of Defs. Collins, Gantman, and Malloy's Pet. to Compel Arbitration (Def.'s Reply").)

I. BACKGROUND

Plaintiff accepted a nomination to become a partner of KPMG LLP ("KPMG") in the Spring of 1999.[2] (FAC ¶ 19; Def.'s Pet. to Compel Arbitration ("Def.'s Pet.") 3.) Once Plaintiff accepted the nomination, he entered into the 2002 Partnership Agreement of KPMG (the "Partnership Agreement"), which required mandatory and binding arbitration of all disputes of KPMG partners relating to KPMG. The Partnership Agreement provided in pertinent part:

> Any dispute between the Firm and any Member or between or among Members arising out of or relating to the Firm of the accounts or transactions thereof or the dissolution or winding up thereof, the construction, meaning or effect of any provision of this Agreement, or the rights or liabilities of a Member or such Member's representatives ("Disputes") shall be submitted for resolution by arbitration in accordance with the procedures set forth in this Section. . . . All arbitrations hereunder shall be held either in the State and City of New York or in Wilmington, Delaware.

(Def.'s Pet. 4; Decl. of Michael Crisafulli in Supp. of Def. Erin Collins' Pet. to Compel Arbitration and Mot. to Stay Proceedings Pending Arbitration ("Crisafulli Decl.") Ex. 2, ¶ 17(i).)

Defendant Collins alleges that "[i]n or about mid-2002, the I.R.S. began investigating certain tax shelters advocated by [Plaintiff]." (Def.'s Pet. 4.) Plaintiff then resigned from KPMG in early 2003. (Def.'s Pet. 4; First Am. Compl. ("FAC") ¶ 38.) Plaintiff's resignation became effective on August 31, 2003. (Def.'s Pet. 4; FAC ¶ 41.) "Shortly thereafter, [Plaintiff] executed the [2003 Settlement Agreement and Release of All Claims ("Settlement Agreement")], which extinguishe[d] any and all claims he might have against KPMG and its employees, including [Defendant Collins]." (Def.'s Pet. 4.) In pertinent part, the Settlement Agreement provided:

---

[2] Plaintiff identifies KPMG as "a limited liability partnership organized and existing under the laws of the State of Delaware with its principal place of business in the City of New York, State of New York. KPMG is one of the Big [four] accounting firms." (FAC ¶ 4.) "KPMG is a member of non-party KPMG International, a Swiss cooperative under which accounting firms around the world operate using the trade name 'KPMG.'" (FAC ¶ 5.)

> [Plaintiff] . . . does hereby release and forever release and discharge KPMG as well as its successors, predecessors, and the partners, officers, directors, principals, heirs, assigns, agents, employees, attorneys, and representatives . . . from any and all causes of action, actions, judgments, liens, debts, contracts, indebtedness, damages, losses, claims, liabilities, rights, interests, and demands, known or unknown, suspected to exist or not suspected to exist, anticipated or not anticipated, whether or not heretofore brought before any state or federal court or before any state or federal agency or other governmental entity, which [Plaintiff] has or may have against any released person or entity by reason of any and all acts, omissions, events or facts occurring or existing prior to the date hereof including without limitation . . . breach of contract of good faith and fair dealing, defamation, . . . infliction of emotional distress, . . . claims for wages, . . . severance pay, . . . and breach of contract.

(Crisafulli Decl. Ex. 1, ¶ 13.)  Furthermore, Plaintiff and KPMG agreed that the Settlement Agreement would be construed in favor of arbitration and that arbitration would be the final and binding means for resolving any disputes between them.[3]  (Crisafulli Decl. Ex. 1, ¶ 8.)  "On October 17, 2005, [Plaintiff] was indicted by a federal grand jury for his role in selling tax shelters to KPMG clients."  (Def.'s Pet. 6.)  "Following a trial by jury, on December 18, 2008, [Plaintiff] was acquitted on all charges."  (FAC ¶ 88.)

On July 20, 2009, Plaintiff filed a Complaint against KPMG.  (*See generally* Compl.)  On October 1, 2009, Plaintiff filed a First Amended Complaint ("FAC"), thereby adding the following KPMG partners and employees as Defendants: (1) Timothy P. Flynn; (2) Claudia Taft;

---

[3] The Settlement Agreement included the language: "[Plaintiff] and KPMG intent that the provisions regarding the disputes released herein be construed as broadly as possible, and incorporate herein similar federal, state, or other laws, all of which are similarly waived by KPMG." (Crisafulli Decl. Ex. 1, ¶ 8.)

3

1 (3) Joseph Loonan; (4) Dennis Malloy; (5) John S. Chopack; (6) Erin Collins; (7) Diane Fuller; (8) Mark Ely; and (9) Andrew Gantman (collectively, "Defendants"). *(See generally* FAC.)  The FAC no longer includes KPMG as a named Defendant. (*See generally* FAC.)  Plaintiff's FAC alleges the following causes of action: (1) malicious prosecution; (2) intentional infliction of emotional distress; (3) breach of fiduciary duty; (4) fraudulent concealment; and (5) civil conspiracy. (*See generally* FAC.)  Plaintiff states that the "indictment against [him] arose directly from the course and scope of his employment with KPMG." (FAC ¶ 82.)  Plaintiff's FAC is also similar to the complaint he filed in state court against KPMG on October 1, 2009 (the "State Court Action").[4] (*See* Def.'s Pet. Exs. A, B; *see* Morrison Decl. Ex 1, *Greenberg v. KPMG LLP*, BC 423046, filed Oct. 1, 2009.)

Defendant Collins now requests that this Court compel arbitration and stay this action pending the completion of arbitration. (Def.'s Pet. 1.)  Plaintiff's Opposition "concedes that the three claims for intentional infliction of emotional distress, breach of fiduciary duty, and fraudulent concealment concern or touch, in whole or in part, acts and omissions that occurred prior to [Plaintiff's] departure from KPMG and are therefore subject to the arbitration provision of the Settlement Agreement entered into by [Plaintiff] and KPMG." (Pl.'s Opp'n 3.)  Furthermore, in the State Court Action, Judge Elizabeth White granted state defendant KPMG's motion to compel arbitration and stay proceedings pending arbitration on February 2, 2010. (*See* Not. of Order Compelling Arbitration in Pl.'s Related State Court Action Against Non-Party KPMG ("Not. of State Court Action") Exs. A, B.)

---

[4] Plaintiff's State Court complaint, filed on October 1, 2009, alleges the following causes of action: (1) indemnity under California Labor Code § 2802; (2) indemnity under 6 Delaware Code § 15-401(c); (3) indemnity under 6 Delaware Code §15-701(d); (4) breach of implied covenant of good faith and fair dealing; (5) breach of covenant of good faith and fair dealing; (6) malicious prosecution; (7) defamation; (8) intentional infliction of emotional distress; (9) fraudulent concealment; and (10) declaratory relief.  (Decl. of Peter B. Morrison ("Morrison Decl.") Ex 1.)

II. DISCUSSION

    A.    Standard

Under the Federal Arbitration Act (the "FAA"), "[a] written provision in a . . . contract evidencing . . . an agreement in writing to submit to arbitration of an existing controversy arising out of such a contract . . . shall be valid, irreconcilable, and enforceable." 9 U.S.C. § 2. "Thus, a district court must determine: (1) whether a valid, enforceable arbitration agreement exists, and (2) whether the claims asserted in the complaint are within the scope of the arbitration agreement." *Bischoff v. DIRECTV, Inc.*, 180 F. Supp. 2d 1907, 1102 (C.D. Cal. 2002). Here, the parties do not dispute that the arbitration provisions in the Settlement and Partnership Agreements (collectively, "the Agreements") are valid and enforceable.[5] However, the parties disagree over the scope of the Agreements' arbitration provisions.[6] (Pl.'s Opp'n 3.)

    B.    The Scope of the Agreements

"Arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Susai v. B.V. Jagadeesh*, 2007 WL 1742870 (N.D. Cal. June 14, 2007) (citing *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)). "The scope of an arbitration agreement is governed by federal substantive law." *Bischoff*, 180 F. Supp. 2d at 1103 (citing *Tracer Research Corp. v. Nat'l Environ. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994)). The FAA provides that arbitration agreements governed by it, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Indeed, the FAA was created "to reverse the

---

    [5] "Upon consideration of the arguments asserted by Defendants [including Defendant Collins] in their motions to compel arbitration, [Plaintiff] concedes that the three claims for intentional infliction of emotional distress, breach of fiduciary duty, and fraudulent concealment concern or touch, in whole or in part, acts and omissions that occurred prior to [Plaintiff's] departure from KPMG and are therefore, subject to the arbitration provision of the [Settlement Agreement]." (Pl.'s Opp'n 3.) Such language is an unambiguous admission that at least the arbitration provision of the Settlement Agreement is a valid and enforceable arbitration provision.

    [6] Plaintiff's Opposition states, "[t]he claims in this action based on malicious prosecution and civil conspiracy, however, concern acts and omissions that occurred solely after [Plaintiff's] departure from KPMG and are therefore not subject of any agreement to arbitrate." (Pl.'s Opp'n 3.)

5

longstanding judicial hostility to arbitration agreements," and "to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

"The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability." *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const.*, 460 U.S. 1, 24 (1983)). "[A] court must also take into account the strong federal policy favoring enforcement of agreements to arbitrate, resolving any doubts concerning the scope of arbitrable issues in favor of arbitration." *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986, 990 (S.D. Cal. 1999) (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). Arbitration is therefore, required, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Here, Plaintiff argues that the Agreements' arbitration provisions do not cover his malicious prosecution and civil conspiracy claims against Defendant Collins because said provisions only apply to disputes that occurred prior to his departure from KPMG. (Pl.'s Opp'n 3.) However, Plaintiff's FAC expressly alleges that the malicious prosecution and civil conspiracy claims, like his other claims, "[arose] from and/or are related to Plaintiff's prior employment with KPMG." (FAC ¶¶ 2, 82, 91, 123.) Thus, the malicious prosecution and civil conspiracy claims "concern or touch, in whole or in part," Plaintiff's prior work at KPMG, just as his other claims do. (Pl.'s Opp'n 3; Def.'s Reply 2.) There are no "positive assurances" in the Agreements' arbitration provisions that would otherwise preclude arbitration of Plaintiff's malicious prosecution and civil conspiracy claims. *See United Steelworkers of Am.*, 363 U.S. at 582-83.

The Agreements' arbitration provisions require arbitration of not only disputes "arising" out of them, but of disputes "relating" to them, as well. Crisafulli Decl. Ex. 1, ¶ 13; Crisafulli Decl. Ex. 2, ¶ 17(I); *see Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (holding that to

6

require arbitration, "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability"); *see also Bosinger*, 57 F. Supp. 2d at 993 ("In comparison to an arbitration clause utilizing the language 'arising out of,' which is construed to apply only to a narrow range of disputes specifically relating to the interpretation and performance of the contract at issue, courts interpret an arbitration provision containing the language 'arising out of and or related to' as a 'broad arbitration clause.'"). Consequently, it is clear from the plain language of the Agreements' arbitration provisions, namely the "related to" language, that they are intended to cover a wide range of disputes between Plaintiff and KPMG, as well as disputes between Plaintiff and KPMG employees, agents, and third party beneficiaries, such as Defendant Collins, and which Plaintiff concedes, as he has admitted that the other three related claims against Defendant Collins should be arbitrated. *See supra* note 5.

Accordingly, because the Agreements' arbitration provisions are intended to be "broadly," construed and applied, and in light of the strong federal policy in favor of enforcing arbitration agreements, even if doubts concerning the scope of arbitrable issues remain, Defendant Collins' Petition is GRANTED. Certainly, Judge Elizabeth White concluded the same when she compelled arbitration as to Plaintiff's malicious prosecution and fraudulent concealment claims against KPMG in the State Court Action, as well. (Not. of State Court Action, Exs. A, B.)

III. RULING

For the foregoing reasons, Defendant Collin's Petition to Compel Arbitration is **GRANTED**. The present action is stayed pending resolution of the arbitration proceedings.

IT IS SO ORDERED.

Dated: April 14, 2010

*S. James Otero*

S. JAMES OTERO
UNITED STATES DISTRICT JUDGE